# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-0762V

|  |  |
|---|---|
| CHARLES TILLMAN,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: August 5, 2025 |

*Sara J. Watkins*, Robert Peirce & Associates, P.C., Pittsburgh, PA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On July 13, 2022, Charles Tillman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a right shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on September 29, 2020. Petition at ¶2, 15. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of his alleged vaccine-related injury for more than six months, and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that he has satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On October 30, 2023 (about 15 months after the case was initiated), Respondent filed his Rule 4(c) Report, arguing that Petitioner could not satisfy the Act's "severity requirement" or the Table elements of a SIRVA claim. ECF No. 28. Petitioner subsequently filed a Motion for a Ruling on the Record ("Mot.") on January 24, 2024. ECF No. 29. Respondent filed a response ("Resp.") on February 21, 2024 and Petitioner filed a reply ("Repl.") on March 20, 2024. ECF No. 30, 32. The matter is now ripe for adjudication.

## II.    Relevant Facts

### A.     *Medical Records*

Petitioner received flu and Pneumovax[3] vaccines in his right deltoid on September 29, 2020, in Pittsburgh, PA. ECF No. 6-2 at 2-3. There is no record evidence that Petitioner had any history of right shoulder pain prior to his vaccination.

Six weeks after his vaccination, on November 11, 2020, Petitioner saw his primary care provider ("PCP") via a telemedicine appointment. Ex. 13-1 at 57.[4] He reported right shoulder pain since his flu shot, which began with "significant burning and pain at the time of the injection" and had persisted since. *Id*. He reported no relief from home remedies, such as ice, heat, and Voltaren gel, and that he required supplements to sleep at night. *Id*. He was diagnosed with impingement syndrome and referred to physical therapy. *Id*. at 60. The doctor encouraged him to follow up in six months or as needed. *Id*.

Petitioner next sought treatment almost nine months later, when he saw an orthopedist in August 2021 with complaints of "right shoulder pain since September 2020 when he had his flu shot." ECF No. 6-1 at 22, 24. He reported having an MRI that showed a "partial thickness rotator cuff tear."[5] *Id*. at 24. He reported having difficulty with his work as an electrician. *Id.* On exam, Petitioner's right shoulder range of motion was 160

---

[3] The Pneumovax vaccine is not covered by the Vaccine Injury Table.

[4] Petitioner filed exhibits labeled 1-3 at ECF No. 6 on August 11, 2022. Petitioner then filed an un-numbered exhibit at ECF No. 13 on March 6, 2023 and exhibits labeled 1-4 at ECF No. 25 on September 14, 2023. Therefore, for clarity exhibits will be identified herein by ECF No.

[5] In May, 2023, Petitioner asked about obtaining records from his MRI, which he noted was in July 2021, and alleged that he had an MRI in his affidavits. *See* ECF No. 7 at ¶7; ECF No. 23-1 at ¶7; ECF No. 25-1 at 26. However, no MRI orders or reports have been filed.

degrees in forward flexion and abduction, external rotation to 70 degrees, and internal rotation to T10. *Id*. at 27. Impingement signs were positive. *Id*. Petitioner was given a corticosteroid injection and was instructed that if he experienced improvement he would be sent for physical therapy and if not, surgery would be considered. *Id*. at 23-24, 27.

After another lengthy treatment gap (more than a year and a half), Petitioner had a telemedicine annual exam on March 9, 2023. ECF No. 25-1 at 32. He reported continued right shoulder pain that interrupted his sleep and limited him to working only 1-2 days per week. *Id*. at 32. He noted that he was not financially able to take off more time from work. *Id*. He reported that "he did not feel PT helped when he tried it."[6] *Id*. He was encouraged to consider surgery or additional time off work when his finances allowed. *Id*. at 35.

No further medical records relating to Petitioner's shoulder pain have been filed.

B.   *Affidavit Evidence*

Petitioner filed two affidavits in support of his claim. In the first, dated June 20, 2022, he states that he developed right should pain "within hours" of his flu shot that "continued for several months." ECF No. 7 at ¶5-6. He stated that he underwent an MRI, required a corticosteroid injection, and was told he may need surgery in the future. *Id*. at ¶7.

Petitioner's second affidavit, dated September 11, 2023, adds information related to left elbow pain that he developed in early 2023. *See* ECF No. 23-1 at ¶10-16. Petitioner also noted that his right shoulder pain forced him to use his left hand to perform his duties as an electrician. *Id*. at ¶9.

III.   **Applicable Legal Standards**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

---

[6] Petitioner indicated that he participated in telemedicine physical therapy "in winter 2021-2022", but has not filed any physical therapy records. *See* ECF No. 25-1 at 26.

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine

Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

In addition to requirements concerning severity of petitioner's injury, a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (*e.g.* tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## IV. Findings of Fact

### A. *Severity*

To satisfy the statutory severity requirement, Petitioner must demonstrate that his symptoms more likely than not continued until at least March 29, 2021 – six months after his September 29, 2020 vaccination (as there is evidence of onset the same day). ECF No. 13-1 at 59. Respondent argues that the medical records do not support severity, because Petitioner had one appointment addressing his right shoulder pain six weeks after vaccination, and then did not seek treatment again for over eight months. Resp. at 6-8. The medical records support the gap in treatment alleged by Respondent.

Respondent relies on *Brennom vs. Sec'y of Health & Human Servs.*, No. 21-0051V, 2023 WL 7490248 (Fed. Cl. Spec. Mstr. Oct. 6, 2023) to support his argument. In *Brennom*, I found that a petitioner had not satisfied the statutory severity requirement when the record showed she had five months of treatment, followed by gap of over one year. *Id*. at *4. In that case, however, there was additional evidence that the petitioner's SIRVA injury "had likely resolved" *prior* to the six-month mark, as partially established by the relief provided by two cortisone injections. *Id*. Further, the treatment gap in that case was approximately 13 months – starting after five months of treatment with physical therapy and injections - and there was MRI evidence of other conditions that could have caused the recurrence of pain. *Id*. at *5. In this case, by contrast, Petitioner did not receive treatment during the gap that could have resolved the symptoms that were documented six weeks after his vaccination.[7] The gap in this case is also a bit shorter, and there is no evidence of other conditions, or any intervening injury.

Respondent also notes that Petitioner "made no attempt to explain why he did not seek further care for his alleged injury." Resp. at 7. It is true that Petitioner has not explained the gap in treatment in his Motion or Reply. But there is evidence in the record that suggests a gap in treatment was reasonable. First, Petitioner's PCP encouraged him to follow up in six months – suggesting that he believed additional treatment was not

---

[7] Petitioner was referred to physical therapy at his first appointment, but there is no evidence that he received treatment at that time. *See* ECF No. 13-1 at 60. On two occasions in the medical records, Petitioner mentioned engaging in telemedicine physical therapy, possibly during the winter of 2021-22. He did not file any of those records. *See* ECF No. 25-1 at 26, 32. Notably, Petitioner does not allege any physical therapy treatment in his Petition, Amended Petition, or Motion. *See* ECF No. 1, 23, 29.

imminently necessary. *See* ECF No. 13-1 at 60. Second, there is evidence in the record that Petitioner had financial constraints on his ability to seek ongoing treatment. *See* ECF No. 25-1 at 35.

Further, when he returned to treatment, Petitioner explicitly linked his shoulder pain back to his flu shot, and stated that it had persisted since that time. *See* ECF No. 6-1 at 24. At that time, he had reduced range of motion and positive impingement signs, and received a corticosteroid injection. *Id.* And, unlike in *Brennom*, there is no evidence that Petitioner's symptoms had resolved prior to the six month mark. Thus, I find that Petitioner's situation is more similar to that in *Rodionov v. Sec'y of Health & Human Servs.*, No. 20-0842, 2023 WL 8112948 (Fed. Cl. Spec. Mstr. Oct. 18, 2023). That petitioner had two medical appointments close in time to vaccination, and then a seven-month gap before further treatment, which spanned the six-month deadline. *Id*. at *5.

While Respondent is correct that there is thin evidence in this case, I find that the evidence is nevertheless enough to satisfy the severity requirement. This is a very close call – and Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). The length of time between treatment and the lack of significant treatment does, however, *greatly undermine* grounds for any kind of substantial award of pain and suffering in this case (and in fact supports a very modest award, likely less than $15,000.00). Petitioner should be mindful of this going forward.

B.     *Limited Range of Motion*

Respondent also argues that Petitioner has failed to demonstrate limited range of motion as required by the third QAI for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(iii); *See also Bolick v. Sec'y of Health & Human Servs.*, No. 20-0893, 2023 WL 8187307, at *7-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023) (establishing that the third QAI requirement "requires that a Petitioner demonstrate they suffered both pain and limited range of motion."). Respondent notes that Petitioner's range of motion was only evaluated once during his treatment course, and that he "demonstrated the same ROM in both arms." Resp. at 9.

While Respondent is correct that the record indicates the same range of motion in both shoulders, he fails to note that the exam actually revealed slightly reduced forward flexion, abduction and external rotation. During the August 3, 2021 orthopedist visit, Petitioner had forward flexion and abduction to 160 degrees and external rotation to 70 degrees. Ex. 6-1 at 27. Normal shoulder ROM for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, 90 to 100 degrees in external rotation, and 70 to 90 degrees in internal rotation. Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88 (F. A. Davis Co., 5th ed. 2016).

Petitioners are not required to show that their range of motion is reduced compared to the non-vaccinated shoulder, or even that it remains consistently the same. To read such a requirement into the QAI would mean that any petitioner with a pre-existing injury to the opposite shoulder would be precluded from making a claim for a SIRVA injury. Range of motion *in the affected shoulder* is an objective assessment – and here, Petitioner has provided evidence in a medical record that his right shoulder range of motion was reduced. Therefore, I find that Petitioner has provided preponderant evidence to satisfy the third QAI Table requirement for a SIRVA injury.

### V. Ruling on Entitlement

#### A. *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that he experienced limited range of motion in his right shoulder. 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10). Accordingly, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

#### B. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination on September 29, 2020 in Pittsburgh, PA. Ex. 6-2 at 2; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. ECF No. 7 at ¶9-10; ECF No. 23-1 at 17-18; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
